The prisoner, John Brown, was charged with rape, upon the (436) person of one Winny McDaniel; and one A. C. Moody was likewise indicted as aiding and abetting. Brown was tried alone, the other party having escaped. The principal witness on the part of the State was Winny McDaniel, who swore that John Brown and Moody came to her house in May. Brown was a colored man and called himself Lowery, and said he was a brother of Henry Berry Lowery. He told the witness to get him something to eat. She said she had nothing, did not want to get it; he said kill a chicken, which was done. While *Page 317 
the chicken was cooking, he said he was going out and would call her and she must come. He put his pistol by his plate while he was eating; after he had finished eating he gathered a pail of water and put out the fire. He said Henry Berry said it must be put out. He then went into the other end of the house and called her daughter Mary. Witness went, he made her go. He wanted to know why she had been shunning him. He said, if witness did not give up to him he would make her feel what was in his pistol, and would have Henry Berry and his gang upon her. Witness further stated, that the prisoner had connection with her, and against her will. Upon cross examination, she stated that this occurred about four miles from Lumberton, on the road to Moss Neck; that when the parties came she was in bed, and there was no light in the house and that it was a dark night. They cursed and swore around the house, for some time before they came in. Moody gave his name, and said to the other person with him, "Come in, Mr. Lowry." The house was a double pen log house, with a passage between the rooms. Prisoner called Mary, and she went to save Mary. He was standing up when she went in. He said if she did not submit to him he would have Henry Berry's gang upon her. She was very much frightened, and there was some scuffle. He had a pistol, and she feared those whom she supposed were around the house; witness said Brown was black and Moody was white, and she knew it was brown. The parties were drinking and remained until daylight. Witness stated that Turney Davis and his two brothers (437) were around the house at the time the violence was committed, but that neither she nor the accused knew it. She kept the fact a secret, for some time from fear.
Mary McDaniel was examined as a witness, and her testimony in every particular corroborated her mother's.
Turney Davis was examined. He said that the prosecutor, Winny McDaniel, was his aunt. That when he heard that the Lowery gang was there, he and his two brothers armed themselves and went to the place described by first witness; they were in the yard and near the house, heard the parties talking and heard Brown say he had plenty of friends at his back. Knew the parties, saw prisoner with his arms around his aunt Winny; she was begging him to let her alone. The railroad depot was about about half a mile distant. Witness and his brother did not interfere, or make any effort to assist his aunt, or to arrest the parties. They remained in the yard, and near the house until break of day.
Prisoner examined several witnesses. The tendency of this evidence was to show that the principal witness had made contradictory statements in regard to the transaction, and to impeach her character. The *Page 318 
prisoner's counsel asked the Court to charge that, if they believed Davis, the prisoner was not guilty. His Honor refused, and prisoner excepted.
The Solicitor, in his conclusion, pointed to the prisoner and said, "Gentlemen of the jury, I do not ask a verdict in behalf of a poor old woman, but demand, in the name of justice, that this infamous villian be hung, and I will be glad to see him hung." Prisoner excepted. The Judge delivered a written charge to the jury, which is sent up as a part of the record in the case, and is as follows:
"Gentlemen of the Jury: The investigation of guilt and punishment of crime are a painful, but a highly important duty. God has so ordered it, and we worms of the dust must recognize what He has ordered. If He and my country say to me, hang a man, I will do it, however painful it may (438) be. But, gentlemen, your duty is not as painful as mine. You sentence no man. You have only to determine an issue of fact. You have under your oaths, before God and your country to say, upon the evidence, whether the prisoner at the bar is guilty of the crime of which he is accused. Before God and His Holy angels, I charge you, that you will not try him as a colored man — a negro; but as a man accused of crime, without knowing his color or condition. A jury has no right to have `bowels of compassion.' In the courthouse we do not invoke a God of mercy, but a God of justice and of vengeance. If John Brown is guilty, and you say he is, I will condemn him to be hanged as guilty; and I will add, if may duty so declared, if my duty to our mother, North Carolina, required, I would hang him, as many, now in the sound of my voice, have seen me in time past, by orders from the powers above me representing North Carolina, have a man shot. This is painful, but it is necessary. It must be done fairly and manfully, or the law must perish. If this man is guilty and he is allowed to escape, then the chastity of every woman in Robeson County is put at the mercy of every villian that may attempt it. Especially is this the case, if the men of her family should be as cowardly as the wretches, who knowing their kinswoman in the hands of ruffians, and having arms in their hands, to the disgrace of manhood failed to rush to her rescue. May the God of the fatherless, the protector of the widow and the orphan, consume them with the lightnings of His wrath. I would sentence them, more cheerfully than any criminal ever convicted before me.
"Then you have to determine a mere matter of fact, as that two times two are four, irrespective of consequences; just as you would look at the clock to ascertain the hour, whether its chimes would summon an *Page 319 
eager bridegroom, to clasp in his arms the long sought object of tenderest affection; or cause the dungeon doors to unbar for a trembling criminal, to go forth to meet his doom. Crime must be punished, (439) or law will cease to be respected; and, oh my countrymen, I beg you to remember, that if crime is not punished by law, that men will cease to look to the law for protection, and will take justice and vengeance into their own hands. If my wife, my son, or my daughter is injured and the law does not protect them, I will avenge them myself, and you will readily see what such a course will bring about in the land. By the ordinance of God, Himself, the high-priest was made the avenger of blood in Israel. Then let us decide this matter firmly, and with determination, not swayed or influenced by our feelings, but calmly, justly, fairly, without passion or prejudice. It has been contended in an argument of some length, that rape can not be committed without the consent of the woman; that it is impossible to be accomplished violently, without such injury to the person as would leave marks to be exhibited. You can form as correct an estimate of this matter as I. You can determine what chance a feeble woman would have, in the grasp of a strong, vigorous man, excited by passion. As an evidence that there was consent in this case, it is said there was no outcry for assistance and rescue. How is this? Sacred history informs us that the Princess Tamar was ravished by Amnon in David's royal palace; and profane history records the fact that the lustful Tarquin accomplished his fell purpose on the chaste Lucretia in her own house, where she was undoubtedly surrounded by her family; and in each case the crime was not known until the victim revealed it. But the argument has but little bearing on the case before us, for Mrs. McDaniel tells us, that she neither resisted nor cried out; that she was threatened with death if she resisted, and was ordered not to speak `above her breath;' that she submitted from terror of the man, armed with a pistol, and from fear of those whom she had been informed were around the house, the terrible Lowery gang, who she believed were within call, and who would destroy her and her family. Whether she had spoken the truth is for you to determine. Why should she speak falsely? What inducement (440) can she have? What object or end has she to obtain? It can not be malice, for she tells you she never saw the prisoner before that memorable night, when she alleges he came to her house.
"It is the theory of the defense that the defendant can not be found guilty, because Mrs. McDaniel went to him willingly, in place of her daughter, on the principle "nulla injuria volenti fit." Is this so? Was her conduct that of a wanton, so carried away by the pruriency of lustful *Page 320 
desires, that she sought its gratification in the presence of her family, and with their knowledge, and with a negro too? Or was this an act of sublime heroism and noble sacrifice? Does it bring to your minds a picture of beastly sensuality, or that engraving which we often see, of a mother on the deck of a sinking ship, who, while the waves closed over her, holds her babe at arm's length above her head, that its little life may be prolonged a few moments beyond her own? Do you see the leering harlot, or a mother willing to sacrifice herself to the loathsome embrace of a fiend, maddened with lust and liquor, to save her pure and innocent daughter? And does not this act of parental affection remind you of the anguished cry of Israel's King lamenting his beloved but rebellious son, "O my son Absalom; my son; my son Absalom! would God I had died for thee, O, Absalom, my son!" Did she act willingly? If she did, then there was no rape, and the prisoner is not guilty. But if she acted under duress, if she submitted from his compulsion, he is guilty. The Italian bandits, who compelled a female captive to yield to their lusts, by threatening to kill her husband if she did not submit, as truly ravished her, as if they had used the extremest force. Rape is "the carnal knowledge of a woman, forcibly against her will." 4 Black., Com. 210.
"Having stated these principles of law, and briefly discussed some portions of the testimony, it only remains for me to inform you, that it is exclusively the province and office of the jury to attach such (441) weight and importance, and give such credence to the evidence as they, in the exercise of a sound discretion, may see fit. The Court would desire to instruct you, to place you in a position to see the matter clear and understandingly for yourselves, but not to dictate to you how you shall find. It is your duty to weigh and consider every fact and circumstance, as well those that make for the prisoner, as those which tell against him. You will consider the character of the witnesses, their intelligence, the manner in which they gave in their testimony, their opportunities for knowing whereof they testified, the influences, biases, prejudices, passions, which may induce them to testify falsely. You will endeavor to reconcile discrepancies and conflicting statements, if possible, remembering that substantial agreement outweighs circumstantialvariations, or you may receive or reject the whole, or any part of the witnesses' statements. You must weigh witness with witness, compare fact with fact, consider circumstance with reference to circumstance; in a word, you will bring to bear all the tests of truth which your observation, experience or reflection may suggest. You will distinctly bear in mind that the conclusion of guilt must exclude *Page 321 
every reasonable supposition of innocence. If you entertain a reasonable doubt of the guilt of the prisoner, you will return a verdict of not guilty; but if you are satisfied that he undoubtedly committed the act, as charged in the indictment, then you will return a verdict of guilty.
"Sincerely hoping that you may arrive at a sound and truthful conclusion; one which no lapse of time, no subsequent reflection will cause you to wish it had been otherwise, I leave the cause in your hands, remarking to each, `Let all the ends thou aim'st at be thy Country's, thy God's and Truth's.' "
I certify that the foregoing statement of evidence, and the Judge's charge, in the case of the State v. John Brown, are correct.
WM. J. CLARKE, J. S.C.
The jury returned a verdict of guilty. Motion for a venire (442)de novo. Motion overruled. Judgment of death was pronounced and the prisoner appealed.
The expression, by his Honor, of his strong indignation, that persons within hearing of the alleged violence did not rush to the rescue of the woman upon whom the violence was alleged to have been committed, and of his eagerness for an opportunity to punish them for their cowardliness, was a clear intimation of his opinion that the violence was committed, and that the prisoner was guilty. Such intimation of his opinion upon the facts is forbidden by statute; and, as has often been decided, entitles the prisoner to a new trial.
PER CURIAM. Venire de novo.
(443)